# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ISRAEL BRIGGS, for the use and benefit of the UNITED STATES OF AMERICA,** | ] ] ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:19-cv-01690-ACA** |
| | ] | |
| **QUANTITECH, INC., et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

Defendant QuantiTech, Inc. ("QuantiTech"), as prime contractor, and Qualis Corporation ("Qualis"), as subcontractor, contracted with the United States Air Force to provide technical and management services at bases around the United States. Qualis hired Plaintiff Israel Briggs to work on a project at an Air Force base in Florida. After Mr. Briggs challenged what he believed to be irregularities in a civilian Air Force employee's supervision of his work, submission of a progress report, and attention to a cybersecurity vulnerability, Qualis terminated his employment. Mr. Briggs then filed suit against Qualis and QuantiTech, as joint employers. (Doc. 1). Mr. Briggs's amended complaint alleges that Qualis and QuantiTech violated the whistleblower protection provisions of the federal False

Claims Act, the National Defense Authorization Act, and the Florida Whistleblower Act by firing him for opposing conduct he believed to be fraudulent.  (Doc. 43).

Before the court are two motions to dismiss, one filed by Qualis (doc. 50), and the other filed by QuantiTech (doc. 55).  Because Mr. Briggs has not alleged facts that, if true, would establish an objectively reasonable belief that Qualis and QuantiTech were defrauding the government, the court **WILL GRANT** the motions to dismiss and **WILL DISMISS** the amended complaint **WITHOUT PREJUDICE**.

## I.    BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff.  *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).  The court may also consider documents a plaintiff attaches to a complaint.  *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . .").  Mr. Briggs attached a number of documents to his amended complaint.  (Docs. 43-1 to 43-14).  The court therefore considers them to be part of his pleading and incorporates their contents into the description of the allegations.  *See Hoefling*, 811 F.3d at 1277.

Mr. Briggs also attaches a number of documents to his response in opposition to QuantiTech's motion to dismiss.  (Docs. 57-1 to 57-8).  Typically, if the court considers any evidence outside the pleadings in connection with a motion to dismiss, the court must convert the motion to one for summary judgment.  *See* Fed. R. Civ. P. 12(d).  An exception exists for documents that are of undisputed authenticity and central to the plaintiff's claims.  *Horsley*, 304 F.3d 1125, 1134 (11th Cir. 2002).  Neither defendant challenges the authenticity or centrality of the documents.  Moreover, even if the documents were not central to Mr. Briggs' claims, considering them is harmless because they do not alter the resolution of the motions to dismiss.

The Department of Defense contracted with QuantiTech to provide "program management, analysis, technical, and engineering support to units of the [United States Air Force] at Eglin Air Force Base," in Florida.  (Doc. 43 at 4 ¶ 18, 7 ¶ 31).  Qualis was a subcontractor.  (*Id.* at 4 ¶ 18, 7 ¶ 31).  From November 2017 until May 2018, Qualis employed Mr. Briggs as the Information System Security Manager working on the subcontract, although he was not formally appointed to that role until close to the end of his employment.  (*Id.* at 3 ¶ 12, 4 ¶ 19, 8 ¶ 33).  One of Mr. Briggs' responsibilities was working on an "Authorization to Operate" a hardware/software system related to testing weapon systems.  (*Id.* at 8 ¶¶ 35–36).

Mr. Briggs expected his supervisor to be Qualis employee Robert Richardson and that he would work directly with the Air Force's program manager.  (Doc. 43 at

9 ¶¶ 37–38).  To his dismay, a different civilian Air Force employee named Robin Hays began supervising him.  (*Id.* at 9 ¶ 39–40).  Mr. Briggs believed that Ms. Hays' "insertion of herself in Mr. Briggs's chain of command" and the way she exercised her authority made his contract with Qualis into a "personal services" contract, which a federal regulation prohibits absent specific statutory authority.  (*Id.* at 17 ¶ 68).  Mr. Briggs believed that Qualis and QuantiTech's acquiescence in the conversion of his contract created a conflict of interest that it should have disclosed to the United States.  (Doc. 43 at 18 ¶ 70).  He further believed that the failure to disclose the conflict of interest made Qualis' and QuantiTech's claims for payment fraudulent.  (Doc. 43 at 18 ¶ 71).

In March 2018, Mr. Briggs met with Ms. Hays "to discuss his concerns about the blurred lines of responsibility" and his belief that gaps in the chain of command and Ms. Hays' "inserting herself into the process" were causing delays to the project. (Doc. 43 at 10 ¶ 45).  Ms. Hays responded by writing Mr. Briggs an email stating that the project manager preferred to have his team bring him relevant information instead of attending meetings.  (*Id.* at 10 ¶ 46; Doc. 43-2 at 6–7).  Mr. Briggs responded that Ms. Hays was "interfer[ing] and prevent[ing]" him from carrying out his job because the Air Force Instructions did not describe her job or role.  (Doc. 43 at 11 ¶ 47).  Ms. Hays acknowledged that the Instructions did not set out her role and stated that "if this is a stumbling block I don't know how we are going to get

past it." (*Id.* at 11 ¶ 48; Doc. 43-2 at 4).  Ms. Hays later told Mr. Briggs that if he was not comfortable with her role in the project, she would not assign him as the Information System Security Manager, even though she lacked the authority to make that assignment, as only the project manager could issue the appointment.  (Doc. 43 at 11 ¶¶ 49–50; Doc. 43-2 at 3).

Mr. Briggs wrote to Ms. Hays, stating that her threat to reassign him seemed retaliatory and that the Qualis Site Lead needed to be involved in the conversation. (Doc. 43 at 12 ¶ 51; Doc. 43-2 at 2).  He also alerted both Ms. Hays and the Site Lead to a cybersecurity vulnerability involving the generation of "bidirectional traffic."  (Doc. 43 at 12 ¶ 52; Doc. 43-2 at 3).  The Site Lead did not respond, but Ms. Hays did.  (Doc. 43at 12 ¶ 53; Doc. 43-2 at 2).  She told him that the traffic through the hub at issue moved in only one direction and asked Mr. Briggs whether he was comfortable working with her on the project because she did not "feel that [she could] get this [Authority to Operate] completed if [he wasn't] comfortable." (Doc. 43at 12 ¶ 53; Doc. 43-2 at 2).

Several days later, Mr. Briggs met with Ms. Hays and her immediate supervisor to discuss Mr. Briggs' and Ms. Hays' concerns.  (Doc. 43 at 13–14 ¶¶ 55–56).  Among Mr. Briggs' concerns were that Ms. Hays did not have an authorized role in "the process," that she lacked certifications required to be part of the cybersecurity team, and that the squadron was not in compliance with certain

regulations.  (*Id.* at 14 ¶ 56).  In an email sent shortly after this meeting, Mr. Briggs complained to an engineer on the project that he had not been given full authority to do his job, that he was not able to communicate freely with the project manager, that Ms. Hays' priority was doing other projects, "creating bogus progress reports," and holding up progress on the project.  (*Id.* at 14 ¶ 57; Doc. 43-4 at 1).  In that email, Mr. Briggs also stated that Ms. Hays had inaccurately entered a progress report indicating that the project had reached a milestone a month and a half before it actually reached that milestone.  (Doc. 43 at 15 ¶ 58; *see* Doc. 43-4 at 1).

In another email to Ms. Hays and the Site Lead, Mr. Briggs stated that the "Mission Support" team had validated the cybersecurity vulnerability he had brought up before.  (Doc. 43 at 15–16 ¶ 60; Doc. 43-6 at 2).  He then emailed the project manager, with a copy to the Site Lead, mentioning some "cybersecurity concerns" but discussing only the confusion about roles and responsibilities and the delay in formally appointing him as the Information System Security Manager.  (Doc. 43 at 16 ¶ 61; Doc. 43-7 at 2–4).  That day, the project manager appointed Mr. Briggs as the Information System Security Manager.  (*Id.* at 16 ¶ 62).  That was also the day that Mr. Briggs began a temporary tour of duty with the Air Force Reserves.  (*Id.* at 16 ¶ 63).

While Mr. Briggs was on his tour of duty with the Air Force Reserves, Qualis emailed the program manager and another Air Force employee to confirm that, after

unsuccessful attempts to resolve "communication, and roles and responsibilities issues," the Air Force no longer required Mr. Briggs' services as the Information System Security Manager.  (Doc. 43 at 19 ¶ 73; Doc. 43-9 at 2).  Qualis received confirmation the next business day.  (Doc. 43 at 19 ¶ 73; Doc. 43-9 at 2).  After Mr. Briggs returned from his tour of duty, he was informed that Qualis was furloughing him "due to the government customer no longer funding you for your position" and that he had until April 27 to find a new position within Qualis or be fired.  (Doc. 43 at 19 ¶ 76; Doc. 43-10 at 2).  He was ultimately terminated.  (Doc. 43 at 22 ¶ 82).

## II.    DISCUSSION

"To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'"  *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quotation marks omitted).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*,

550 U.S. at 555 (quotation marks and alteration omitted).  In other words, the court must accept all factual allegations, but must disregard "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246 (11th Cir. 2005).

### 1.  False Claims Act

In Count One, Mr. Briggs asserts that Qualis and QuantiTech violated the False Claims Act, 31 U.S.C. § 3730(h), by firing him for disclosing what he believed to be fraud.  (Doc. 43 at 24–25).  He asserts that he believed Qualis, with the consent of QuantiTech, was defrauding the government by: (1) converting or permitting the conversion of his employment contract with Qualis into a personal services contract with the United States, and failing to disclose the resulting organizational conflict of interest; (2) failing to report a false progress report made by Ms. Hays; and (3) conspiring with several civilian Air Force employees to conceal cybersecurity vulnerabilities from the Air Force chain of command, allowing Qualis and QuantiTech to misrepresent that they were performing as required by their contracts. (*Id.* at 15 ¶ 58, 17 ¶ 68, 18 ¶ 70–72).

The False Claims Act imposes liability on those who make false or fraudulent claims for payment from the United States.  31 U.S.C. § 3729(a)(1); *see Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1045 (11th Cir. 2015).  It also provides

"whistleblower" protection in the form of a cause of action for an employee discharged "because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." *Id.* § 3730(h)(1).

The standard to state a claim for retaliatory discharge under § 3730(h) is not entirely clear where, as here, the plaintiff does not allege that the defendants actually defrauded the government, but instead that his actions were based on what he believed to be fraud. *See Hickman v. Spirit of Athens, Ala., Inc.*, __ F.3d __, 2021 WL 164322, at *4 (11th Cir. Jan 19, 2021) (noting different standards for determining what constitutes protected conduct under the current version of § 3730(h), but declining to hold what standard applies in the Eleventh Circuit). Other circuits have adopted a reasonable-belief standard under § 3730(h). *Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469, 480 (7th Cir. 2004); *Wilkins v. St. Louis Hous. Auth.*, 314 F.3d 927, 932–33 (8th Cir. 2002); *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002). Moreover, the Eleventh Circuit has adopted a reasonable-belief standard for claims of retaliatory discharge based on other federal statutes. *See Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (addressing Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Age Discrimination in Employment Act). Finally, the parties agree that the reasonable-belief standard is the appropriate standard in this

case.  (Doc. 43 at 5 ¶ 23; Doc. 50 at 8; Doc. 52 at 2–3).  Accordingly, the court will apply that standard.

The reasonable-belief standard requires the plaintiff to show not only "that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented."  *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (emphases in original).  There is no dispute that Mr. Briggs has alleged that he subjectively believed the defendants were defrauding the government.  The only question is whether Mr. Briggs has alleged facts that, taken as true and construed in his favor, would establish that his subjective belief was objectively reasonable.  (*See* Doc. 50 at 9; Doc. 55 at 21–30).

The court must "consider the controlling substantive law in this circuit when . . . assess[ing] whether a plaintiff's mistaken belief is objectively reasonable." *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008) (addressing a Title VII retaliatory discharge claim).  To be clear, a plaintiff can prevail on a retaliatory discharge claim "even if the target of an investigation or action to be filed was innocent." *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 416 (2005).  Thus, a retaliatory discharge claim will not necessarily fail simply because the underlying facts are insufficient to state a substantive claim of fraud under the False Claims Act.  But the underlying facts must "be close enough

to support an objectively reasonable belief" that the defendants were engaging in fraud.  *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).

An entity seeking payment from the United States violates the False Claims Act by making "(1) a false statement or [engaging in a] fraudulent course of conduct, (2) . . . with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due."  *United States ex rel. Bibby v. Mortgage Inv'rs Corp.*, __ F.3d __, 2021 WL 137739, at *3 (11th Cir. Jan 15, 2021) (quotation marks omitted).  Omissions of material information from requests for payment can also be considered false statements or fraudulent conduct, but only if the claim for payment "makes specific representations about the goods or services provided" and the "failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths."  *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2001 (2016).

There is no bright line rule for what "material" means.  But the Eleventh Circuit recently instructed that courts should consider, among other relevant factors, "(1) whether the requirement is a condition of the government's payment, (2) whether the misrepresentations went to the essence of the bargain with the government, and (3) to the extent the government had actual knowledge of the misrepresentations, the effect on the government's behavior."  *Bibby*, __ F.3d __, 2021 WL 137739, at *4.  The materiality requirement is important because "[t]he

False Claims Act is not an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health Servs.*, 136 S. Ct. at 2003 (citation and quotation marks omitted).   "Materiality . . . cannot be found where noncompliance is minor or insubstantial."   *Id.*

Qualis and QuantiTech challenge the reasonableness of Mr. Briggs' belief that they were defrauding the government, arguing, among other things, that no reasonable person could believe fraud had occurred where the allegedly fraudulent actions originated from a government employee or were disclosed to the government.[1]   (Doc. 50 at 9, 18–20; Doc. 55 at 28–30).   This is essentially an argument that any fraudulent conduct was not material.   The court concludes that, even accepting as true all Mr. Briggs' factual allegations and construing them in his favor, he cannot state a claim for retaliatory discharge under the False Claims Act because none of the statements or omissions that he believed were false or fraudulent could reasonably be considered material.

Mr. Briggs' first theory is that he believed Ms. Hays' actions in supervising his work converted his contract with Qualis into a personal services contract with

---

[1] QuantiTech also makes persuasive arguments that it cannot be considered Mr. Briggs' employer.   (Doc. 55 at 9–21).   The court agrees that, even assuming "joint employer" liability exists under the False Claims Act and the National Defense Authorization Act, Mr. Briggs has not alleged any facts showing that QuantiTech exerted control over the terms and conditions of Qualis' employees.   *See Peppers v. Cobb Cty., Ga.*, 835 F.3d 1289, 1300 (11th Cir. 2016).   However, because the court will grant the motions to dismiss on the ground that Mr. Briggs has not alleged facts showing an objectively reasonable belief that either Qualis or QuantiTech was defrauding the United States, the court will not address the "joint employer" issue any further.

the government, giving rise to an organizational conflict of interest that Qualis and QuantiTech had a duty to disclose to the government.  (Doc. 43 at 9 ¶ 41, 17–18 ¶ 68–69).  He asserts that Qualis and QuantiTech's failure to disclose the conflict of interest was a material omission.  (*See id.*).  But it is not objectively reasonable to believe that Qualis and QuantiTech were defrauding the government by withholding information about what the government itself did.  *See United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1093 n.10 (11th Cir. 2018) (noting that the government's knowledge of the underlying facts can show that the misstatements were immaterial).

Moreover, even if the government could not be charged with knowledge of Ms. Hays' actions, Mr. Briggs' first theory of fraud amounts to a challenge to Qualis and QuantiTech's alleged failure to comply with government regulations, not their submission of a false or fraudulent claim for payment.  *Cf.* 31 U.S.C. § 3729(a)(1). And as the Eleventh Circuit has emphasized, "[l]iability under the False Claims Act arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies."  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

Finally, as Qualis and QuantiTech argue, Mr. Briggs has not alleged facts that, if true, would show that he had a personal services contract with the government. (*See* Doc. 50 at 12–14; Doc. 55 at 24–26).  A personal services contract is one that

13

creates a direct employer-employee relationship between the government and a contractor's personnel. 48 C.F.R. § 37.104(a). Agencies are prohibited from "award[ing] personal services contracts unless specifically authorized by statute." 48 C.F.R. § 37.104(b). As a general rule, a personal services contract exists when "contractor personnel are subject to the relatively continuous supervision and control of a Government officer or employee." *Id.* § 37.104(c)(1).

But that general rule is subject to serious limitations. For example, "giving an order for a specific article or service, with the right to reject the finished product or result, is not the type of supervision or control that converts an individual who is an independent contractor (such as a contractor employee) into a Government employee." 48 C.F.R. § 37.104(c)(1). And "[t]he sporadic, unauthorized supervision of only one of a large number of contractor employees might reasonably be considered not relevant, while relatively continuous Government supervision of a substantial number of contractor employees would have to be taken strongly into account." *Id.* § 37.104(c)(2). The regulation also lists a number of factors that can be used to determine whether a contract is for personal services. *Id.* § 37.104(d).

Mr. Briggs' allegations do not support a reasonable belief that Ms. Hays' actions converted his employment contract with Qualis into a personal services contract with the government. He does not allege or argue that the government's supervision of his work was improper, but instead that Ms. Hays' supervision of his

14

work was improper because she was not part of the Air Force's "chain of command." (Doc. 43 at 10 ¶ 45, 13 ¶ 55, 17–18 ¶¶ 68–69).  He also alleges that because Ms. Hays required other Qualis employees to sign in and out of work, she assumed inappropriate control over their work.  (*Id.* at 9 n.11).  But even combined and with all inferences made in his favor, those allegations do not support a reasonable belief that the government was exerting the type of supervision and control that would create a direct employer-employee relationship.  *See* 48 C.F.R. § 37.104(c), (d).

Mr. Briggs's second theory is that he reasonably believed Qualis and QuantiTech falsely represented that they were complying with the terms of their contracts because they did not report Ms. Hays' alleged submission of a false progress report.  (Doc. 43 at 15 ¶¶ 58–59, 23 ¶ 87).  This theory fails for the same reason as his first theory: it is not reasonable to believe a failure to disclose the government's own actions was material.  But even if a failure to disclose the government's own actions were materialf, it is not reasonable to believe that one progress report falsely reporting that the project had reached a milestone one and a half months before the project actually reached that milestone was material.  No allegations in the complaint establish, nor can the court reasonably infer, that a single progress report was a material requirement of either Qualis' or QuantiTech's contracts.  Nor is it reasonable to infer that a single progress report was material to their claims for payment.  Thus, Mr. Briggs' belief that Qualis and QuantiTech's

defrauded the government by failing to disclose the inaccuracy of the progress report was not objectively reasonable.

Mr. Briggs' third theory is that he reasonably believed Qualis and QuantiTech concealed a conspiracy between themselves and several civilian Air Force employees to hide a cybersecurity vulnerability from the Air Force, thereby fraudulently representing that they were performing as required by their contracts. (Doc. 43 at 18 ¶ 72).  According to Mr. Briggs' own allegations and evidence, he disclosed this cybersecurity vulnerability to multiple members of the Air Force, and the mission support team investigated the vulnerability.  (Doc. 43 at 15–16 ¶ 60; Doc. 43-6 at 2).  It is not objectively reasonable to believe that Qualis and QuantiTech's failure to disclose information of which the government was already aware constituted a materially false or fraudulent statement in connection with a claim for payment.  *See Hunt*, 887 F.3d at 1093 n.10 (noting that the government's knowledge of the underlying facts can show that the misstatements were immaterial).

Because Mr. Briggs has not alleged facts showing an objectively reasonable belief that Qualis and QuantiTech were defrauding the government, the court **WILL GRANT** their motions to dismiss and **WILL DISMISS** Count One **WITHOUT PREJUDICE**.

2.  National Defense Authorization Act

In Count Two, Mr. Briggs' claim under the National Defense Authorization Act is identical to his claim under the False Claims Act: he asserts that his termination was reprisal for disclosing what he believed to be fraud, in violation of the National Defense Authorization Act, 10 U.S.C. § 2409, by concealing the personal services contract, the false progress report, and the cybersecurity vulnerability.  (Doc. 43 at 25–26).  But although the factual basis for both claims is identical, the legal framework is slightly different.

Like the False Claims Act, the National Defense Authorization Act provides a cause of action for retaliatory discharge.  10 U.S.C. § 2409(c)(2).  It prohibits the discharge of an employee "as a reprisal for disclosing to [certain specified people or entities] information that the employee reasonably believes is evidence of . . . a violation of law, rule, or regulation related to a Department [of Defense] contract." *Id.* § 2409(a)(1)(A).  By its own terms, the National Defense Authorization Act requires that the plaintiff's belief be reasonable.  *See id.*

Qualis contends that this claim fails for the same reasons as the False Claims Act retaliatory discharge claim.  (Doc. 50 at 10).  The court agrees.  Because Mr. Briggs has not alleged facts showing that his belief in the alleged fraud was objectively reasonable, he has not adequately alleged that he disclosed what he reasonably believed to be a violation of a law, rule, or regulation related to the

Department of Defense contracts.  *See* 10 U.S.C. § 2409(a)(1)(A).  Accordingly, the court **WILL GRANT** the motions to dismiss and **WILL DISMISS** Count Two **WITHOUT PREJUDICE**.

  3.  Florida Whistleblower Protection Act

  In Count Three, Mr. Briggs brings a state law claim pursuant to the Florida Whistleblower Protection Act.  The only possible bases for subject matter jurisdiction over this claim are diversity jurisdiction, 28 U.S.C. § 1332(a), or supplemental jurisdiction, *id.* § 1367(a).  The amended complaint does not adequately allege the citizenship of the parties, although it does allege facts from which the court can conclude that the amount in controversy is satisfied.  (*See* Doc. 43 at 3 ¶¶ 9, 14; *id.* at 4 ¶ 16); *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013).  Thus, the only clear jurisdictional basis is supplemental jurisdiction.

  Typically, when a court dismisses the claims over which it has original jurisdiction, it should also decline to exercise supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c)(e); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).  In this case, however, the possibility that the court might have diversity jurisdiction, the clarity of the outcome of the state law claim, and the interests of judicial economy and convenience weigh in favor of the court exercising supplemental jurisdiction to decide Qualis' and QuantiTech's motions to dismiss the Florida law claim.

Mr. Briggs alleges that Qualis and QuantiTech violated the Florida Whistleblower Protection Act by terminating him after he complained about the same acts forming the basis of his federal claims.  (Doc. 43 at 26–27 ¶¶ 109–11). Qualis moves to dismiss the Florida Whistleblower Act claim on the ground that Mr. Briggs has not alleged that he engaged in a protected activity.[2]  (Doc. 50 at 10–20).

The Florida Whistleblower Protection Act prohibits an employer from "tak[ing] any retaliatory personnel action against an employee because an employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."  Fla. Stat. § 448.102(3).  As Qualis notes, Florida courts are split about whether a plaintiff must establish that the employer actually violated a law, rule, or regulation, or merely that he had a good faith, reasonable belief that the employer had violated such a law, rule, or regulation.  (Doc. 50 at 10–12); *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 465 (Fla. 2d DCA 2015) (requiring an actual violation); *Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th DCA 2013) (requiring only a

---

[2] QuantiTech's motion to dismiss focuses on whether it qualifies as Mr. Briggs' employer under the Florida Whistleblower Act.  (Doc. 55 at 16–17).  The court finds QuantiTech's arguments persuasive, but does not reach them because it will dismiss the claims based on the failure to allege a reasonable belief that Qualis and QuantiTech were violating any law, rule, or regulation.

good faith, objectively reasonable belief).   Under either standard, however, Mr. Briggs' claim fails.

If Florida law requires a plaintiff to establish an actual violation of a law, rule, or regulation, Mr. Briggs' claim fails because he does not even attempt to allege an actual violation of any law, rule, or regulation; he alleges only that, before his termination, he believed Qualis and QuantiTech were violating the law.  (*See* Doc. 43 at 26 ¶ 109).  But even if Florida law permits a plaintiff to prevail by establishing a good faith, objectively reasonable belief, this claim fails for the same reasons as Mr. Briggs' federal claims: he has not alleged any facts from which an employee could form an objectively reasonable belief that Qualis and QuantiTech violated any law, rule, or regulation.   Accordingly, the court **WILL GRANT** the motions to dismiss and **WILL DISMISS** Count Three **WITHOUT PREJUDICE**.

## III.   CONCLUSION

The court **WILL GRANT** Qualis and QuantiTech's motions to dismiss and **WILL DISMISS** the amended complaint **WITHOUT PREJUDICE**.

The court will enter a separate final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this February 9, 2021.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE